IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RENEE TERESA-GOELLNER-GRANT, KYLE D. GRANT and ALEXANDER GOELLNER<br><br>        Plaintiffs,<br><br>vs.<br><br>JLG INDUSTRIES, INC., a Pennsylvania Corporation,<br><br>Serve:<br>    The Corporation Trust Company<br>    116 Pine Street, Suite 320<br>    Harrisburg, PA 17101<br><br>and<br><br>BLUELINE RENTAL LLC, a Delaware<br>    limited liability company<br><br>Serve:<br>    CT Corporation System<br>    120 South Central Ave.<br>    Clayton, MO 63105<br><br>        Defendants. | Case No. 4:18-cv-342<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Renee Teresa Goellner-Grant, Kyle D. Grant and Alexander Goellner, for their Complaint against JLG Industries, Inc. ("JLG"), and Blueline Rental LLC ("Blueline") (collectively "Defendants"), makes the following allegations:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Renee Teresa Goellner-Grant is a citizen and resident of Missouri.

2. Plaintiff Kyle D. Grant is a citizen and resident of Missouri.

3. Plaintiff Alexander Goellner is a citizen and resident of Missouri.

1

4. Plaintiff Renee Goellner-Grant was married to Randall Lee Grant until Mr. Grant's death on April 30, 2015.

5. Plaintiffs Kyle D. Grant and Alexander Geollner are the natural sons of Mr. Grant.

6. Plaintiffs bring this action pursuant to Mo. Rev. Stat. § 537.080, commonly referred to as the "Missouri Wrongful Death Statute," on behalf of themselves and all persons entitled to recover under the statute. Plaintiffs are the proper parties to this action under the statute and bring this action for the wrongful death of their husband and father, Randall Lee Grant ("Decedent").

7. Defendant JLG is a Pennsylvania corporation, with its principal place of business at 1 JLG Drive, McConnellsburg, Pennsylvania 17233-9533.

8. Defendant Blueline is a Delaware limited liability company, with its principal place of business at 8401 New Trails Drive, Suite 150, The Woodlands, Texas 77381. Blueline was formerly known as Volvo Rents. On or about January 2012, Volvo Rents acquired Midwest Aerials & Equipment, Inc., which was headquartered in St. Louis, Missouri.

9. This Court has personal jurisdiction over all Defendants pursuant to Missouri's long arm statute Mo. Rev. Stat. § 506.500. All Defendants transact business within Missouri and/or committed a tort within Missouri, avail themselves of the business opportunities here, advertise the availability of parts, services and information within Missouri, ship parts, products and literature into Missouri, and receive money from businesses and individuals within Missouri.

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in St. Louis County, Missouri.

## FACTUAL BACKGROUND

12.     On April 30, 2015, Decedent was an employed by ERMC III Property Management Company LLC ("ERMC").

13.     On April 30, 2015, Decedent was replacing light bulbs in a parking garage of West County Center, using a JLG Aerial Boom Lift, Model No. E450AJ, Lift No. 10422 (the "JLG Lift"), when he became trapped between the control panel of the JLG Lift and a metal cross bar protruding from the ceiling of the garage.

14.     Decedent was later found standing in the enclosed platform of the JLG Lift with his chest and face pushed against the control panel and with the back of his head pressed against a metal cross bar protruding down from the parking garage ceiling.

15.     Decedent's accident, and the forces involved, were so severe that he was crushed and died of compression asphyxia.

16.     The JLG Lift that Decedent was operating was provided to him by his employer ERMC.

17.     ERMC rented the JLG Lift from Defendant Blueline for ERMC employees to perform property maintenance at the West County Center.  At all relevant times, Decedent was using the JLG Lift in a manner reasonably anticipated.

18.     Defendant Blueline supplied the JLG Lift to ERMC and is in the business of regularly selling or renting products of this kind to individuals and businesses.

19. The JLG Lift used by Decedent on April 30, 2015, was defective and unreasonably dangerous in that it exposed users, including Decedent, to unreasonable risks of harm and death.

### *The JLG Lift*

20. The JLG Lift lacked certain safety features, such as a safety guard or SkyGuard®, which would have prevented the crushing-type injury that led to Decedent's death.

21. The JLG Lift that Decedent was operating was originally designed, engineered, manufactured, assembled and marketed by Defendant JLG and placed into the stream of commerce, where it reached Decedent in substantially the same condition as when it left the control of Defendant JLG and had not been materially altered, modified or damaged.

22. Immediately prior to the accident on April 30, 2015, the JLG Lift was in substantially the same condition as when it left the control of Defendant JLG and had not been materially altered, modified, or damaged.

23. At the time, the JLG Lift was being used as intended and in a manner reasonably foreseeable by Defendants.

24. At the time the JLG Lift was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when in Defendant JLG's control.

25. At the time Decedent operated the JLG Lift, the JLG Lift was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended.

26. The accident and danger posed by the defective and unreasonably dangerous condition of the JLG Lift was known or should have been known to Defendants.

27. The JLG Lift failed to function as expected.

28. Alternative feasible designs existed that would not impair the JLG Lift's usefulness or desirability.

29. The alternative feasible designs would have prevented Decedent's injuries and death.

30. As a direct and proximate result of Defendants' conduct, acts and omissions, Decedent was injured and died, which injuries and death caused physical, mental, emotional injuries, and economic damages.

## COUNT I
## WRONGFUL DEATH – STRICT PRODUCT LIABILITY

31. Plaintiffs incorporate by reference the above allegations as if fully set forth herein.

32. Defendant JLG, in the course of its regular business, designed, fabricated, produced, assembled, developed, manufactured, tested, distributed, sold, and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, namely the JLG Aerial Boom Lift, including the JLG Lift, knowing that the JLG Lift would reach consumers without substantial change in the condition in which it was sold and that, at the time the JLG Lift left Defendant JLG's control, it was defective and in an unreasonably dangerous condition.

33. Defendant Blueline, in the course of its regular business, supplied, rented, loaned, leased, sold, and/or placed on the market and/or into the stream of commerce a defective and unreasonably dangerous product, namely the JLG Lift, knowing that the JLG Lift would reach consumers without substantial change in the condition in which it was provided and that, at the

time the JLG Lift left Defendant Blueline's control, it was defective and in an unreasonably dangerous condition.

33. Defendants knew or should have known that ultimate users, operators and/or consumers would not be capable of detecting the aforementioned defects and dangerous conditions.

35. The JLG Lift was, at the time of sale by Defendant JLG, in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

36. The JLG Lift was, at the time of sale, lease or rent by Defendant Blueline, in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

37. On April 30, 2015, the JLG Lift was being used for the purpose for which it was reasonably and foreseeably intended.

38. The JLG Lift was defective and unreasonably dangerous. The defective nature of the JLG Lift included, but is not limited to, the following:

    a. The JLG Lift was defective and unreasonably dangerous because Defendants failed to use technologically feasible and available guard systems to prevent crush injuries;

    b. The structure of the JLG Lift was defective and unreasonably dangerous because it failed to protect an occupant in a foreseeable encounter with an overhead obstruction;

    c. The JLG Lift was defective and unreasonably dangerous because Defendants failed to design or equip the JLG Lift so as to enable an operator to detect and/or avoid overhead obstructions;

6

    d.   The JLG Lift was defective and unreasonably dangerous because Defendants failed to design or equip the JLG Lift so as to provide warning to an operator when approaching or in contact with an overhead obstruction;

    e.   The JLG Lift was defective and unreasonably dangerous because Defendants failed to design or equip the JLG Lift so as to avoid continued operation of the JLG Lift in the foreseeable event that an operator is struck by an overhead obstruction or otherwise impaired;

    f.   The JLG Lift was defective and unreasonably dangerous because Defendants failed to design or equip the JLG Lift was a sensor that, when activated in a foreseeable emergency situation, such as the events that led to the death of Decedent, stops all functions in use at the time;

    g.   The JLG Lift was defective and unreasonably dangerous because Defendants failed to design or equip the JLG Lift was a sensor that, when activated in a foreseeable emergency situation, such as the events that led to the death of Decedent, reverses the immediately preceding operations of the JLG Lift; and

    h.   Such further defects as the evidence will reveal.

39.    The defective and unreasonably dangerous condition of the JLG Lift was the direct and proximate cause of Decedent's serious injuries and death.

40.    Defendants knowingly failed to adequately test the JLG Lift before and during the design, production, lease, rent, and/or sale of the JLG Lift to the public and/or knowingly placed the unreasonably dangerous JLG Lift into the stream of commerce.

41.    As a direct and proximate result of the injuries to and death of Decedent, Plaintiffs were required to expend and incur expenses for substantial medical, hospital and

funeral expenses.  Further, Plaintiffs have forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent.  In addition, Plaintiffs are entitled to all damages that Decedent sustained before his death and for which he would have been entitled to recover had he lived.

42. Prior to Decedent's serious injuries and death, Defendants knew of the defective and unreasonably dangerous condition of the JLG Lift.

43. The aforesaid misconduct of Defendants constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, inducing Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendants in a sum that will deter Defendants from such misconduct in the future.

WHEREFORE, Plaintiffs prays for judgment against Defendants for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000), additional damages for aggravating circumstances, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## COUNT II
## WRONGFUL DEATH – STRICT PRODUCT LIABILITY – FAILURE TO WARN

44. Plaintiffs incorporate by reference the above allegations as if fully set forth herein.

45. Defendant JLG, in the course of its regular business, designed, fabricated, produced, assembled, developed, manufactured, tested, distributed, sold, and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, namely the JLG Aerial Boom Lift, including the JLG Lift, knowing that the JLG Lift would reach consumers without substantial change in the condition in which it was sold and that, at the

8

time the JLG Lift left Defendant JLG's control, it was defective and in an unreasonably dangerous condition.

46. Defendant Blueline, in the course of its regular business, supplied, rented, loaned, leased, sold, and/or placed on the market and/or into the stream of commerce a defective and unreasonably dangerous product, namely the JLG Lift, knowing that the JLG Lift would reach consumers without substantial change in the condition in which it was provided and that, at the time the JLG Lift left Defendant Blueline's control, it was defective and in an unreasonably dangerous condition.

47. Defendants failed to adequately warn consumers and users of the JLG Lift of the risks associated with the use of the product including, but not limited to, the substantial risk of injuries and death due to the defects of the JLG Lift and the unreasonably dangerous condition of the JLG Lift, including the substantial risk of interactions of the JLG Lift with overhead obstructions.

48. Defendants knew or should have known that ultimate users, operators and/or consumers would not be capable of detecting the aforementioned defects and dangerous conditions.

49. Decedent was unaware and was not warned that the JLG Lift created a substantial risk of sustaining a crush injury or death.

50. The JLG Lift was, at the time of sale by Defendant JLG, in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

51. The JLG Lift was, at the time of sale, lease or rent by Blueline, in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

52. On April 30, 2015, the JLG Lift was being used for the purpose for which it was reasonably and foreseeably intended.

53. The defective and unreasonably dangerous condition of the JLG Lift, and the Defendants' failure to warn of such defects and unreasonably dangerous conditions, were the direct and proximate cause of Decedent's serious injuries and death.

54. As a direct and proximate result of the injuries to and death of Decedent, Plaintiffs were required to expend and incur expenses for substantial medical, hospital and funeral expenses.  Further, Plaintiffs have forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent.  In addition, Plaintiffs are entitled to all damages that Decedent sustained before his death and for which he would have been entitled to recover had he lived.

55. Prior to Decedent's serious injuries and death, Defendants knew of the defective and unreasonably dangerous condition of the JLG Lift and failed to give adequate warning of the danger.

56. The aforesaid misconduct of Defendants constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, inducing Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendants in a sum that will deter Defendants from such misconduct in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendants for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000), additional damages for aggravating circumstances, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## COUNT III
## WRONGFUL DEATH – NEGLIGENCE

57. Plaintiffs incorporate by reference the above allegations as though fully set forth herein.

58. Defendant JLG had a duty to exercise reasonable care in designing, manufacturing, marketing, maintaining, supplying, selling, leasing, testing, inspecting or otherwise distributing and placing into the stream of commerce the JLG Boom Lift, including the JLG Lift, at issue in this lawsuit.

59. Defendant Blueline had a duty to exercise reasonable care in marketing, supplying, selling, maintaining, leasing, testing, inspecting or otherwise distributing and placing in the stream of commerce the JLG Boom Lift, including the JLG Lift, as issue in this lawsuit.

60. Defendants owed a duty of reasonable care to Decedent to take reasonable precautions or steps, or provide adequate warnings or instructions, to prevent the type of foreseeable injury suffered by Decedent as a result of the negligence alleged herein.

61. Defendant JLG failed to use reasonable care and diligence in the design, engineering, manufacture, assembly, testing, inspecting, lease and/or sale of the JLG Lift.

62. Defendant Blueline failed to use reasonable care and diligence in the marketing, supplying, selling, maintaining, leasing, testing, inspection, lease and/or sale of the JLG Lift.

63. Defendants breached their duty of reasonable care and diligence, and were therefore negligent in performing their duties to Decedent and others in at least the following respects:

   a. Negligently incorporating defects in the JLG Boom Lift, including the JLG Lift;

    b. Negligently failing to incorporate safety features that could have prevented the injuries and death suffered by Decedent;

    c. Negligently manufacturing or assembling the JLG Lift;

    d. Negligently failing to warn Decedent of the JLG Lift's defects;

    e. Negligently failing to instruct Decedent as to the proper and safe use and operation of the JLG Lift, particularly in the case of use near or in conjunction with overhead obstructions;

    f. Negligently failing to adequately test the JLG Lift;

    g. Negligently failing to retrofit the JLG Lift with available safety features or devices;

    h. Negligently failing to inform Decedent that the JLG Lift had defects or was unreasonably dangerous or that the JLG Lift could be equipped with safety features that could have prevented Decedent's injuries and death;

    i. Negligently failing to inspect the JLG Lift; and

    j. Such further negligent acts and omissions as discovery will reveal.

64. Defendants breached their duty to Decedent and others by failing to take reasonable precautions or steps to prevent the type of foreseeable injury suffered by Decedent as a result of the negligence alleged herein.

65. As a direct and proximate result of Defendants' negligence, Decedent suffered a severe crush injury and death by asphyxiation.

66. At the time of Defendant JLG's design, fabrication, production, assemblage, development, manufacture, testing, distribution and sale of the JLG Lift, JLG knew, or in the exercise of ordinary care, should have known about, the aforesaid defects and dangerous

conditions of the JLG Lift, and failed to eliminate or warn of the defects, and thereby showed complete indifference to and/or conscious disregard for the safety of others.

67. At the time of Defendant Blueline's marketing, supplying, selling, maintaining, leasing, testing, inspecting or otherwise distributing and placing in the stream of commerce the JLG Lift, Defendant Blueline knew, or in the exercise of ordinary care, should have known about, the aforesaid defects and dangerous conditions of the JLG Lift, and failed to eliminate or warn of the defects, and thereby showed compete indifference and/or conscious disregard for the safety of others.

68. The aforesaid misconduct of Defendants constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, inducing Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendants in a sum that will deter Defendants from such misconduct in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendants for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000), additional damages for aggravating circumstances, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiffs hereby request a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all claims and issues so triable.

Dated: February 28, 2018					Respectfully submitted,

                                            THE SIMON LAW FIRM, P.C.
                                            By:     ___/s/ Anthony R. Friedman_____
                                                  John G. Simon, MO#35231
                                                  Anthony R. Friedman, MO#65531
                                                  800 Market Street, Suite 1700
                                                  St. Louis, MO  63101
                                                  (314) 241-2929
                                                  (314) 241-2029 Fax
                                                  jsimon@simonlawpc.com
                                                  afriedman@simonlawpc.com

                                            THE LAW OFFICES OF DANIEL T. RYAN, LLC
                                                  Daniel T. Ryan, MO#38744
                                                  3008 Sutton Blvd., Suite 100
                                                  Maplewood, MO 63143
                                                  (314) 222-7717
                                                  (314) 932-2688 Fax
                                                  dan@danryanlawoffice.com

                                            *Attorneys for Plaintiffs*