UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RENEE TERESA GOELLNER-GRANT, ) <br> KYLE D. GRANT and ALEXANDER ) <br> GOELLNER ) <br>  ) <br> Plaintiffs. ) <br>  ) <br> VS. ) <br>  ) <br> JLG INDUSTRIES, INC. and ) <br> BLUELINE RENTAL, LLC ) <br>  ) <br> Defendants. ) | Cause No. 4:18-cv-342-SNLJ |

**DEFENDANT JLG INDUSTRIES, INC.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Defendant JLG Industries, Inc. ("JLG") provides the following reply memorandum in support of its Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 28) and would respectfully show the Court the following:

<u>**Summary of the Argument**</u>

Plaintiffs have failed to meet their burden of establishing personal jurisdiction over JLG. Plaintiffs' Response (Doc. 38) wholly failed to address or challenge the lack of general jurisdiction over JLG. As such, this Court's analysis is limited to determining whether specific jurisdiction exists.

Plaintiffs' sole basis for asserting the existence of specific jurisdiction is the "stream of commerce" theory. The authorities cited by Plaintiffs are inapplicable, however, because the product did not arrive in the forum state while still in the manufacturer's stream of commerce. Plaintiffs do not dispute that the 2002 JLG E450AJ (s/n 0300066578) (the "Lift") was shipped to Kansas. The arrival of the Lift in Kansas marks the end of the "stream of commerce" for the Lift.

Contrary to Plaintiffs' unsupported claim, Midwest Aerials and Equipment, Inc. ("Midwest Aerial") was not a distributor of JLG.  Rather, Midwest Aerials was a *customer* of JLG and is an independent company completely unrelated to JLG.  As such, any contact the Lift had with Missouri was the result of the independent actions of Midwest Aerials.  Plaintiffs' other unsupported allegations regarding JLG's website and its alleged vast network of distributors in Missouri are likewise of no relevance since Plaintiffs present no evidence that said alleged network resulted in the Lift's presence in Missouri.

Therefore, given the absence of general or specific jurisdiction over JLG, its motion to dismiss for lack of personal jurisdiction should be granted.

### Argument and Authorities

A. ***Plaintiffs have failed to establish specific jurisdiction under the Missouri long-arm statute***

For a federal court to exercise personal jurisdiction over a non-resident defendant, two prerequisites must be satisfied. First, the forum state's long arm statute must be satisfied. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 593 (8th Cir. 2011). Second, the Court must determine whether the defendant has sufficient contacts with the forum state to satisfy the Due Process clause of the Fourteenth Amendment. *Id.* In Missouri, the due process and long arm statute inquiries should be analyzed separately. *Id.,* 646 F.3d at 593, n. 2.

Plaintiffs wholly failed to address whether JLG would be subject to personal jurisdiction under Missouri's long-arm statute. Accordingly, JLG's motion to dismiss should be granted.

B. ***Plaintiffs have failed to establish specific jurisdiction under the Due Process Clause***

Specific jurisdiction refers to jurisdiction over causes of action arising from or relating to a defendant's actions within the forum state. *Arnold v. AT & T, Inc.*, 874 F. Supp. 2d 825, 831 (E.D. Mo. 2012)(Limbaugh, J.) ("In other words, the cause of action must 'arise out of' or 'relate

2

to' a defendant's activities within a state." ) (*citing Romak USA v. Rich,* 384 F.3d 979, 984 (8th Cir. 2004) (internal citations omitted); *see also Bristol-Myers*, 137 S. Ct. at 1780 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."). Plaintiffs' claims do not arise from or relate to any action of JLG committed in Missouri. Accordingly, specific jurisdiction over JLG does not exist, and JLG's motion to dismiss should be granted.

### 1. *The stream of commerce theory does not support personal jurisdiction*

Plaintiffs attempt to establish specific jurisdiction through the stream of commerce theory.[1] Under the stream of commerce theory, specific personal jurisdiction may be exercised "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Clune*, 233 F.3d at 542 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 599, 62 L.Ed.2d 490 (1980)). Here, JLG's uncontroverted affidavit establishes that JLG delivered the Lift directly to Midwest Aerials in Kansas thirteen years before the incident made the basis of this lawsuit—it did not sell the Lift in Missouri, either directly or indirectly through a distributor. Midwest Aerials was a completely independent company and customer. Midwest Aerials was not a distributor of JLG and was not related to JLG in any way. When JLG sold and shipped the Lift to Midwest Aerials in Kansas, JLG had no expectation that it would later be purchased by another consumer in Missouri. Plaintiffs' claims to the contrary are totally unsupported. As such, the stream of commerce theory does not establish specific jurisdiction over JLG.

---

[1] The Supreme Court has recently clarified that the "stream-of-commerce" theory is applicable only to the specific jurisdiction analysis. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 927, 131 S. Ct. 2846, 180 L.Ed. 2d 796 (2011).

3

In support of its assertion of specific jurisdiction, Plaintiffs cite *Clune v. Alimak AB,* 233 F.3d 538 (8th Cir. 2000), and claim that JLG "maintains an expansive system of distributors" in Missouri. *See* Doc. #38 p. 5. However, *Clune* is clearly distinguishable because there is no evidence that JLG, whether in 2002 or now, maintained an expansive system of ***wholly-owned*** distributors in Missouri. In *Clune*, a Swedish manufacturer of construction hoists, Linden-Alimak AB/Alimak AB,[2] was sued in Missouri for wrongful death. 233 F.3d at 541. Linden-Alimak distributed its construction hoists in the United States through its wholly-owned subsidiaries. *Id.* at 541, n. 4. In fact, the only way a customer in the United States could obtain a Linden-Alimak product was through one of its subsidiaries. *Id.* at 543, n. 7. The Eighth Circuit concluded that there were sufficient minimum contacts because: (1) the Swedish company directed its products through a distribution system it set up that consisted of its wholly-owned subsidiaries which had exclusive distribution agreements; (2) Linden-Alimak conducted training seminars in the United States for technicians employed by its subsidiary Alimak, Inc.; (3) 20-40 of the 700 hoists sold in the United States were in Missouri; (4) Linden-Alimak provided sales brochures and instruction manuals to its distributors for use in promoting and servicing its products in the United States; and (5) members of the Linden-Alimak's board of directors also served as directors for its U.S. based subsidiary Alimak, Inc. 233 F.3d at 543-44. The Eighth Circuit concluded that "[a]ny of these facts, *taken alone*, might fall short of purposeful availment, however, when taken together they show that Linden-Alimak AB/Alimak AB engaged in a series of activities that were designed to generate profits to the parent from its ***subsidiaries'*** sales across the United States." 233 F.3d at 544 (emphasis added). It is also important to note that the small percentage of products manufactured

---

[2] Linden-Alimak AB changed its name to Alimak AB in 1983.

by Linden-Alimak that ended up in Missouri did so by and through the acts of Linden-Alimak's subsidiary distributors.

Contrary to Plaintiffs assertion and unlike the manufacturer in *Clune*, JLG has not set up a network of distribution consisting of its wholly-owned subsidiaries and/or distributors. Midwest Aerials was neither a distributor nor a subsidiary of JLG; rather, it was a completely independent entity. In fact, Midwest Aerials was a customer of JLG to whom JLG directly sold the Lift, and, as instructed shipped the Lift to a Midwest Aerial location in Kansas City, Kansas. Unlike the manufacturer in *Clune*, JLG has not engaged in a series of activities designed to generate profits through its subsidiaries; rather, it simply sold and shipped the Lift to one of its customers.

Similarly, *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, (8th Cir. 1994), which is indirectly cited by Plaintiffs, is also distinguishable. In *Barone*, the Eighth Circuit concluded that personal jurisdiction over a Japanese manufacturer of fireworks existed because its regional distributors placed its products into the stream of commerce in five Midwestern states, including the forum state. 25 F.3d at 613–14. The manufacturer claimed it had no actual knowledge that its distributor sold fireworks into the forum state (Nebraska); however, the Eighth Circuit concluded that "such ignorance defied reason and could aptly be labeled 'willful'" because "the very name of the distributor is 'Rich Bros. *Interstate* Display Fireworks Co.'" *Id*. at 613 (emphasis in original). Additionally, the Eighth Circuit noted that the location of the distributors "suggested an effort to reach much of the country through a limited number of regional distributors." *Id*. In both *Clune* and *Barone*, the manufacturers delivered products to their distributors that in turn sold the products to customers in the forum state. Those are clearly not the facts before the Court in this matter.

5

In contrast, *Staple Cotton Coop. Assoc. v. D.G. and G., Inc.*, 631 F.Supp.2d 1169 (E.D. Mo. 2007), and *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690 (8th Cir. 2003), provide examples of the distinction between a non-resident defendant's intentional conduct of placing a product into the stream of commerce and the unilateral act of a consumer bringing the product into the forum state. In *Stanton*, the Eighth Circuit concluded personal jurisdiction did not exist over a Massachusetts corporation that applied a coating to fabric used in the manufacture of a mechanical heart valve, in a suit filed in Nebraska by the widow of a man who died after surgical implantation of the valve, because "[w]hatever contacts the fabric processed by [the corporation that applied the coating to the fabric] may have had with Nebraska were the result of the actions of [the manufacturer of the valve] and not of [the corporation]." 340 F.3d at 692–94.

Similarly, in *Staple*, the Eastern District of Missouri concluded it did not have personal jurisdiction over a manufacturer of a device that was purchased and resold to a Missouri consumer by a distributor because the manufacturer did not ship the product directly to the Missouri consumer, did not know of the ultimate destination of the product until the lawsuit was filed, and the product ended up in Missouri by and through the unilateral activity of its distributor. 631 F.Supp. 2d at 1173–74.

Here, like the products at issue in *Stanton* and *Staple*, the presence of the Lift in Missouri is the result of the unilateral act of Midwest Aerials. Once JLG shipped the Lift to Midwest Aerials in Kansas, Midwest Aerials retained no control over the Lift. The Lift was not shipped directly from JLG to either the decedent, Randall Lee Grant, or to the owner of the lift at the time of the incident made a basis of this lawsuit, ERMC III Property Management Company LLC.  In fact, JLG did not even know that the Lift had been sold by Midwest Aerials to ERMC III Property Management Company LLC and transported to Missouri until after this lawsuit was filed. The

presence of the Lift in Missouri was due to the unilateral acts of Midwest Aerial and/or ERMC III Property Management Company LLC.  These acts of third parties cannot establish minimum contacts sufficient to confer personal jurisdiction over a non-resident defendant such as JLG. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985).

Plaintiffs have failed to show that JLG delivered the Lift into the stream of commerce with the expectation that it would be purchased by a consumer in Missouri. As such, Plaintiffs have failed to establish the existence of specific jurisdiction over JLG.

### 2. *JLG's internet website does not create specific jurisdiction*

Plaintiffs' attempt to use JLG's website to support the exercise of specific personal jurisdiction must fail for several reasons.  First, there is no evidence that any of the entities listed in Plaintiffs' Exhibit C, obtained through JLG's website, are exclusive distributors or wholly owned subsidiaries of JLG.  Rather, these entities are completely independent resellers or service providers.  Second, and most significantly, there is no evidence that any of these entities were involved in the chain of distribution of the Lift in question in 2002, or at any other relevant time. Accordingly, the existence of these companies is completely irrelevant to the issues to be determined by this Court.  Last but not least, it is worth noting that Midwest Aerials itself is not included in the list of Missouri sales providers of JLG products, Plaintiffs' Exhibit C.  Midwest Aerial's absence further undermines Plaintiffs' unsupported inference that when JLG delivered the Lift in 2002 to Midwest Aerial in Kansas City, it was with JLG's intent that the Lift would be purchased by consumers in Missouri.

Furthermore, the existence of JLG's website itself is not a sufficient basis for the imposition of personal jurisdiction in Missouri simply because the website can be accessed in Missouri. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004).  Maintaining a passive website,

7

such as JLG's, does not support personal jurisdiction "because the defendant is not directing its business activities toward consumers in the forum state in particular." *Id*. at 549–50. Exercising personal jurisdiction on the basis of maintaining a passive website "would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country." *Id*. at 550. Further, "[t]his scheme would go against the grain of the Supreme Court's jurisprudence which has stressed that, although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants." *Id*.

Plaintiffs do not cite any authority for the proposition that a passive website such as JLG's is sufficient to establish general jurisdiction. More importantly, Plaintiffs show no connection between the current JLG website and any sale of the Lift in Missouri. As such, JLG's maintenance of its website cannot support this Court's exercise of personal jurisdiction. *See Sheely v. Gear/Tronics Industries, Inc.,* 2015 WL 4958083 *5 (E.D. Mo. Aug. 19, 2015)(Limbaugh, J.)(granting defendant's motion to dismiss for lack of personal jurisdiction).

### 3. *JLG's decision not to challenge personal jurisdiction in an unrelated case is irrelevant*

Plaintiffs' reference to an unrelated case in which JLG chose not to challenge personal jurisdiction by Plaintiff is a red herring. A party may choose to waive its challenge to personal jurisdiction in a particular case for any number of reasons. Plaintiffs do not cite any authority for the proposition that such a party would be estopped from challenging personal jurisdiction in all future, unrelated cases. Moreover, JLG's answer in the unrelated, asbestos exposure case cited by Plaintiff was filed in 2015. Since that time, the Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 1779 (2017) has altered the landscape for challenges to personal jurisdiction. What JLG chose or did not choose to do in an

8

unrelated case filed against it in Missouri is irrelevant to this Court's evaluation of personal jurisdiction in this case.

### 4. *JLG's Form 10-K is irrelevant.*

Plaintiffs' reference to JLG's 2002 Form 10-K, Plaintiffs' Exh. D is likewise a red herring. The Form 10-K is not relevant to general jurisdiction. It does not address any of the grounds required by the Supreme Court in *Daimler AG*. Likewise, none of the general statements in the Form 10-K are probative of specific jurisdiction over JLG, in Missouri, as a result of its delivery of the Lift in Kansas.

For these reasons, this Court should grant Defendant JLG Industries, Inc.'s motion to dismiss for lack of personal jurisdiction and dismiss all of Plaintiffs' claims against it.

Respectfully Submitted,

*/s/ Corey L. Kraushaar*
Corey L. Kraushaar, #6281922
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
(314) 421-3400 Telephone
(314) 421-3128 Facsimile
ckraushaar@bjpc.com

and

Kyle M. Rowley, T.A., *admitted pro hac vice*
Giorgio Caflisch, *pending admission pro hac vice*
Mary London Fuller, *admitted pro hac vice*
Sheehy, Ware & Pappas, P.C.
909 Fannin Street, Suite 2500
Houston, Texas 77010
Phone: (713) 951-1000
Fax: (713) 951-1199
krowley@sheehyware.com
gcaflisch@sheehyware.com
mfuller@sheehyware.com

**ATTORNEYS FOR DEFENDANT**

## JLG INDUSTRIES, INC.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this 8th day of June, 2018, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served upon all counsel of record via the court's electronic filing system.

John G. Simon, MO #35231
Anthony R. Friedman, MO # 65531
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, MO 63101
jsimon@simonlaw.com
afriedman@simonlaw.com

Daniel T. Ryan, MO# 38744
THE LAW OFFICES OF DANIEL T. RYAN, LLC
3008 Sutton Blvd., Suite 100
Maplewood, MO 63143
dan@danryanlawoffice.com

John F. Mahon
Terrence J. O'Toole, Jr.
WILLIAMS, VENKER & SANDERS LLC
100 North Broadway, 21st Floor
St. Louis, Missouri 63102
jmahon@wvslaw.com
totoole@wvslaw.com

                                        *Corey L. Kraushaar*

3126695v1